UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-00188-WCM

| | |
|---|---|
| CHARLES ZIMMERMAN,   ) | |
| ) | |
| Plaintiff   ) | |
| ) | |
| -vs-   ) | **AMENDED COMPLAINT** |
| ) | **(Jury Trial Demanded)** |
| BLUE ROOSTER SOUTHERN GRILL   ) | |
| and STEVE REDMOND,   ) | |
| ) | |
| ) | |
| Defendants.   ) | |

NOW COMES the Plaintiff, Charles Zimmerman ("Zimmerman"), by and through undersigned counsel, and alleges against the Defendants, as follows:

## PARTIES

1. Plaintiff is a citizen and resident of Haywood County, State of North Carolina.

2. Defendant, Blue Rooster Southern Grill ("Blue Rooster"), is a business, organized under the laws of North Carolina, with its principal place of business, and doing business, as a restaurant, in Haywood County, North Carolina.

3. Defendant Steve Redmond ("Redmond"), is a manager of the Blue Rooster, and, upon information and belief, is a citizen and resident of Haywood County, North Carolina.

## JURISDICION

4. This Honorable Court has jurisdiction of the parties and subject matter of this civil action, as the events in question took place in Haywood County, and all parties live and/or work in Haywood County and are subject to the jurisdiction of this Honorable Court.

\*\*[This case has been removed from the General Court of Justice, Haywood County, 23-CvD-623, to Federal Court in the Western District of North Carolina].\*\*

## FIRST CAUSE OF ACTION
## ASSAULT

5. On Monday, June 27, 2022, at approximately 12:00 Noon, Zimmerman came into the Blue Rooster for dinner. Zimmerman walked straight to the bar, to place his order "to go."

6. Zimmerman had only been to the Blue Rooster twice before and this was several months prior to this incident. He had previously placed his orders in the bar area.

7. Zimmerman told the women who greeted him that he wanted to place a "to go" order; however, he first expressed some concerns he had regarding his earlier visits. Zimmerman shared that he had left a minor negative review, about portion size on some side dishes. Importantly, the review was actually a three-star review, merely commenting on the serving size of the sides to go. The woman advised Zimmerman to "hold on" and that she would be right back.

8. During the time Zimmerman was waiting, Zimmerman walked over to observe a display of quilts and started a conversation with a woman who was also looking at them. He told the woman that they were beautiful works of art, but outside his price range, as they were handmade locally. She agreed and walked away at about the time the manager, Redmond, came walking out from the back. He did not look happy.

9. The manager, Redmond, met Zimmerman behind the bar and gruffly said something to the effect of, "How can I help you?" Zimmerman did not see the bartender any longer.

10. Zimmerman said that he was just telling the bartender about the last time he was there and had received a medicine cup full of gravy for the pint of mashed potatoes, and that he had left a three-star review that reflected this online.

11. Zimmerman asked if this issue had been fixed, and if so that he was going to place his order and if not, then he was going to just go down the street to another restaurant.

12. With a great deal of emotion and passion, and raising his voice, the manager said:

| | |
|---|---|
| Manager/Redmond: | "Then you can leave now." |
| Zimmerman: | "Are you serious? That is where this is going to go?" |
| Manager/Redmond: | "Yes, it is. You already f***ked-me and now you can leave." |
| Zimmerman: | "So, you don't want to know more or make it better?" |
| Manager/Redmond: | "I said 'get out.'" |
| Zimmerman: | "I am shocked and have never been talked at like this before over service. I wish I had been recording this event, but I never imagined that it would go this way." |

13. Next, Zimmerman pulled his telephone out of his pocket and began videoing the situation. The manager, Redmond, observed Zimmerman hit record, and said:

| Manager/Redmond: | "No, no, no.  Get out of here now.  I already told you to leave." |
| Manager/Redmond: | "Something's wrong with you.  You have mental issues." |

14. The manager, Redmond, then came from behind the bar quickly and grabbed Zimmerman by the shoulder with one hand and grabbed the telephone and Zimmerman's hand, by his other hand.  The manager, Redmond, assaulted and battered Mr. Zimmerman.  The manager, Redmond, was physically and forcibly pushing Zimmerman out the door of the restaurant.

15. Other restaurant patrons and employees witnessed the event and heard the comments made by Redmond to Zimmerman.

16. After assaulting, battering, violating Zimmerman's civil rights, and defaming his character, Zimmerman left the property and went down the street for lunch.  The owner there offered Zimmerman a free glass of wine and he ate a nice lunch.

17. On the way out, Mr. Zimmerman had to pass by the Blue Rooster, so he just opened the door and tried to take a picture of the manager, Redmond, for his records.  The manager, Redmond, was standing there at the door and Zimmerman did not get the picture, because the manager, Redmond, put his hand up on the phone.  This, too, as an assault and battery upon Zimmerman.

18. The manager, Redmond, kept pulling on the phone, assaulting, battering, violating Zimmerman's civil rights, and defaming his character, all the while inflicting emotional distress upon Zimmerman.

19. These violations of Zimmerman's rights by the manager on duty, Redmond, have directly and proximately caused Zimmerman to suffer panic attacks, he has performed poorly at work due to the mental anguish and emotional distress, proximately caused by the defendant and Blue Rooster.  Zimmerman had his first argument with his boss at his work, and then her boss.  He had never had an argument at work before this incident at Blue Rooster.  Then, he had an emotional breakdown, by the time he escalated this to the Vice-President of Human Resources, at his company.

20. They recommended, and Zimmerman is participating in, the Employment Assistance Program ("EAP") regarding this mental anguish and emotional distress, that was directly and proximately caused by the manager on duty, Redmond, and Blue Rooster, by assaulting, harassing, battering, demeaning, defaming, violating his civil rights, humiliating him in front of other customers, among other legal violations of Zimmerman's rights.

21. Zimmerman has bipolar disorder and borderline personality disorder.  He is consider disabled under the American with Disabilities Act.  The manager on duty, Redmond, assaulted and battered Zimmerman, a person suffering with mental health issues.

22. Zimmerman thought that the manager on duty, Redmond, was just going to ask him, basically, how can we make things right, regarding the serving size of the sides. Instead, the manager, Redmond, assaulted and battered Zimmerman, for having a constructive question about the size of a side of mashed potatoes. Zimmerman never raised his voice. Zimmerman never touched the manager. Zimmerman did not consent to these assaults and batteries. These assaults and batteries were unwelcome, unacceptable, and a violation of Zimmerman's rights.

23. Zimmerman was in disbelief and was in apprehension, fearful and scared for his safety, directly and proximately due to the manager's, Redmond's, actions. Redmond's actions were done while acting in the course and scope of his employment with defendant Blue Rooster. Blue Rooster is vicariously liable for the actions of Redmond, under the doctrine of respondeat superior, thus holding not only Redmond liable, but Blue Rooster, as well, for the damages proximately caused to Zimmerman.

24. Zimmerman is under a doctor's care. He is working with his physician to determine the best course of medication to manage the mental anguish and emotional distress proximately caused by the manager's, Redmond's, assault, battery, and harassment. Zimmerman felt violated and helpless at the hands of this assaultive manager, Redmond.

25. The actions of the manager on duty, Redmond, and Blue Rooster, by and through the acts of its agents, servants, and employees, acting within the course and scope of their employment, in assaulting, battering, harassing, violating Zimmerman's civil rights, and defaming Zimmerman, has directly and foreseeably caused as well as exacerbated Zimmerman's mental health and medical conditions.

26. The actions of the manager, Redmond, have directly and proximately caused pain and suffering, and physical and emotional damages to Mr. Zimmerman. Zimmerman's work has been directly affected by these violations of his rights, and he has increased anxiety about leaving his house and even going to the grocery store, because he may see this individual.

27. The actions of defendants Blue Rooster and Redmond, exhibited aggravation related to the injuries inflicted upon Zimmerman, in that these actions show malice, willful and wanton conduct, all in violation of G.S. Section 1D-15, thus entitling Zimmerman to punitive damages. These actions were "participated in" directly by the manager Redmond, and Blue Rooster has condoned this conduct constituting the aggravating factor, giving rise to punitive damages, thus Redmond personally, as well as Blue Rooster, the business, by and through the conduct of the Defendant manager Redmond, are liable for punitive damages to the Plaintiff, Zimmerman.

## SECOND CAUSE OF ACTION
## BATTERY

28. Zimmerman incorporates by reference and realleges herewith the allegations set forth in paragraphs 1 - 27, above.

29. Zimmerman was offensively touched against his will by the manager, Redmond, as outlined above in this Complaint.

30. Zimmerman did not consent to the contact of the manager Redmond.

31. The manager, Redmond, battered Zimmerman, in that he grabbed, pulled, shoved, and forced Zimmerman out of his restaurant; Redmond grabbed Zimmerman's phone from him, and put his hands upon Zimmerman, all without Zimmerman's consent; Redmond pushed, physically controlled the movement of Zimmerman, and obstructed Zimmerman's freedom of movement by unlawful and nonconsensual touching, assaulting, and battering Zimmerman, all in violation of North Carolina law.

32. The actions of the manager, Redmond, were taken in the course and scope of his employment with Blue Rooster, and as such, Blue Rooster is vicariously liable, under the doctrine of respondeat superior, for the actions of its agents, servants, and employees, including but not limited to, manager, Redmond.

33. Zimmerman has been damaged by the actions of the manager, Redmond, and Blue Rooster, with physical pain and suffering, emotional distress and mental anguish, feelings of unjust treatment, reputational harm, economic loss, fear, anxiety, humiliation, and personal indignity, as well as for physical injury and out-of-pocket expenses.

34. The actions of defendants Blue Rooster and Redmond, exhibited aggravation related to the injuries inflicted upon Zimmerman, in that these actions show malice, willful and wanton conduct, all in violation of G.S. Section 1D-15, thus entitling Zimmerman to punitive damages. These actions were "participated in" directly by the manager Redmond, and Blue Rooster has condoned this conduct constituting the aggravating factor, giving rise to punitive damages, thus Redmond personally, as well as Blue Rooster, the business, by and through the conduct of the Defendant manager Redmond, are liable for punitive damages to the Plaintiff, Zimmerman.

### THIRD CAUSE OF ACTION
### DEFAMATION OF CHARACTER

35. Zimmerman incorporates by reference and realleges herewith the allegations set forth in paragraphs 1 - 34, above.

36. Defendant Blue Rooster, by and through it manager and Defendant, Redmond, have made false and slanderous statements, of and concerning the Plaintiff, Zimmerman.

37. These statements, including but not limited to the following, as set forth above:

a. "Yes, it is. You already f***cked-me and now you can leave."

b. "Something's wrong with you. You have mental issues."

38. These statements are intentionally misleading, and were published to third persons, including but not limited to, other customers at the restaurant at the time, both inside and outside of the restaurant, as well as other people on the street, that witnessed the incident.

39. Upon information and belief, defendant Blue Rooster, and through defendant, Redmond, made the false statements of and concerning the Plaintiff, Zimmerman, with the intent to injure his reputation.

40. The false statements made by defendant have caused substantial and irreparable injury to Zimmerman's reputation.

41. Defendant Blue Rooster, by and through manager, defendant, Redmond's false statements constitute slanderous defamation of character of Zimmerman.

42. As a direct and proximate result of defendants' defamation of character, Zimmerman has suffered damages and continues to suffer irreparable harm to his reputation. Zimmerman has been damaged by the actions of defendants, proximately resulting in pecuniary loss, damages for physical pain and suffering, inconvenience, damages for mental suffering, emotional distress, and damages to injury to reputation.

43. The actions of defendants Blue Rooster and Redmond, exhibited aggravation related to the injuries inflicted upon Zimmerman, in that these actions show malice, willful and wanton conduct, all in violation of G.S. Section 1D-15, thus entitling Zimmerman to punitive damages. These actions were "participated in" directly by the manager Redmond, and Blue Rooster has condoned this conduct constituting the aggravating factor, giving rise to punitive damages, thus Redmond personally, as well as Blue Rooster, the business, by and through the conduct of the Defendant manager Redmond, are liable for punitive damages to the Plaintiff, Zimmerman.

## FOURTH CAUSE OF ACTION
## VIOLATION OF THE AMERICAN WITH DISABILITIES ACT (ADA), TITLE III
## 42 U.S.C. § 12182, PUBLIC ACCOMMODATIONS

44. Zimmerman incorporates by reference and realleges herewith the allegations set forth in paragraphs 1 - 43, above.

45. Zimmerman is "disabled" within the meaning of the American with Disabilities Act, Title III, in that he suffers from bi-polar disorder. 42 U.S.C. § 12102.

46. Defendants own, lease, or operate a place of public accommodation, i.e., the Blue Rooster restaurant, and are subject to Title III jurisdiction and liability.

47. Defendants, including but not limited to, Redmond, discriminated against the Plaintiff, Zimmerman, an individual, because of his disability, in that Redmond, failed and refused to serve and denied opportunity to participate in the restaurant public accommodation to Zimmerman, cussed him out, assaulted and battered him, intimidated, and defamed his character, proximately causing mental anguish and emotional distress to the Plaintiff. Defendants knew or should have known of Zimmerman's disability.

48. Defendants have excluded, segregated, denied participation, and treated Zimmerman unequally, all in violation of Title III of the ADA, by defendants actions and omissions, taken in the course and scope of employment.

49. The actions of the defendants in violation of Title III of the ADA have proximately caused damages to Zimmerman, thus entitling him to recovery of said compensatory damages, out-of-pocket expenses, attorney's fees, and damages for pain and suffering, mental anguish, and emotional distress.

## FIFTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

50. Zimmerman incorporates by reference and realleges herewith the allegations set forth in paragraphs 1 - 49, above.

51. The conduct herein outlined within this Complaint constitutes extreme and outrageous conduct by the defendants, which is intended to and did in fact directly and proximately cause severe emotional distress to Zimmerman.

52. The conduct of the defendants, as outlined herein, exceeds all reasonable bounds of decency in a civilized society, and the conduct by all standards was extreme and outrageous.

53. The defendants, including but not limited to defendant Redmond, intended the infliction of mental anguish and emotional distress, and knew with substantial certainty that emotional distress would result, or in the alternative, defendants acted with reckless disregard of a high probability that emotional distress would occur.

54. Zimmerman was humiliated by the actions of defendant Redmond. There were other persons present at this time who, upon information and belief, heard the defamatory statements of defendant Redmond, and witnessed his physical assault and battery of Zimmerman.

55. As a direct and proximate result of said defendants' intentional infliction of emotional and mental distress, Zimmerman has suffered and continues to suffer to date, damages, including but not limited to, severe emotional harm and mental distress, fear, anxiety, embarrassment, mental anguish, humiliation and personal indignity, physical injury, pain and suffering, and out-of-pocket expenses.

56. The actions of defendants Blue Rooster and Redmond, exhibited aggravation related to the injuries inflicted upon Zimmerman, in that these actions show malice, willful and wanton conduct, all in violation of G.S. Section 1D-15, thus entitling Zimmerman to punitive damages. These actions were "participated in" directly by the manager Redmond, and Blue Rooster has condoned this conduct constituting the aggravating factor, giving rise to punitive damages, thus Redmond personally, as well as Blue Rooster, the business, by and through the conduct of the defendant manager Redmond, are liable for punitive damages to the Zimmerman.

## SIXTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

57. Zimmerman incorporates by reference and realleges herewith the allegations set forth in paragraphs 1 - 56, above.

58. Defendants are under a positive legal duty of due care, to exercise the ordinary care of a reasonable and prudent person, so as not to harm the plaintiff.

59. Defendants further under a positive legal duty not to assault the plaintiff, a positive legal duty not to batter the plaintiff, a positive legal duty not to defame the character of the plaintiff, as well as a positive legal duty not to inflict emotional distress upon the plaintiff, Zimmerman.

60. Defendants have breached their duty of due care, and other outlined duties by the actions described herein this Complaint, including but not limited to the tortious behavior of the defendants, including but not limited to assault, battery, violation of the ADA, infliction of emotional distress, and defamation of character.

61. Defendants have failed to exercise that degree of care which a reasonable and prudent person would exercise under similar circumstances.

62. Defendants did not act reasonably or prudent when they verbally abuse, physically attack and batter, put a patron in apprehension and fear of physical contact and in fact batter the defendant with an unlawful touching, defame a patron's character and discriminate against their disability status, because a patron left a three-star review, that is less than a five-star review. This is unacceptable behavior in a civilized society. This behavior is tortious and negligent.

63. These breaches of duty by the defendants have directly and proximately caused damages to the plaintiff, Zimmerman.

64. As a direct and proximate result of said Defendants' negligent infliction of emotional and mental distress, plaintiff has suffered and continues to suffer to date, severe emotional harm and mental distress, embarrassment, mental anguish suffering, humiliation, physical pain and suffering, personal indignities, and out-of-pocket expenses.

65. The actions of defendants Blue Rooster and Redmond, exhibited aggravation related to the injuries inflicted upon Zimmerman, in that these actions show malice, willful and wanton conduct, all in violation of G.S. Section 1D-15, thus entitling Zimmerman to punitive damages. These actions were "participated in" directly by the manager Redmond, and Blue Rooster has condoned this conduct constituting the aggravating factor, giving rise to punitive damages, thus Redmond personally, as well as Blue Rooster, the business, by and through the conduct of the defendant manager Redmond, are liable for punitive damages to the Plaintiff, Zimmerman.

## DEMAND FOR JURY TRIAL

The Zimmerman, through undersigned counsel and pursuant to North Carolina General Statutes § 1A-1, Rule 38, hereby demands a jury trial for all issues involved in the above-entitled action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Zimmerman, demands the following relief, jointly and severally, against all the defendants:

1. For judgment against all the Defendants, for compensatory damages, and an additional sum as set by the trier of fact as punitive damages for Assault, as alleged in Plaintiff's First Cause of Action.

2. For judgment against all the Defendants, for compensatory damages, and an additional sum as set by the trier of fact as punitive damages for Battery, as alleged in Plaintiff's Second Cause of Action.

3. For judgment against all the Defendants, for compensatory damages, and an additional sum as set by the trier of fact as punitive damages for Defamation of Character, as alleged in Plaintiff's Third Cause of Action.

4. For judgment against all the Defendants, for compensatory damages, and an additional sum as set by the trier of fact as punitive damages for Violation of the American with Disabilities Act, Title III, Public Accommodation, as alleged in Plaintiff's Fourth Cause of Action.

5. For judgment against all the Defendants for compensatory damages, and an additional sum as set by the trier of fact as punitive damages for Intentional Infliction of Emotional Distress, as alleged in Plaintiff's Fifth Cause of Action.

6. For judgment against all the Defendants for compensatory damages, and an additional sum as set by the trier of fact as punitive damages for Negligent Infliction of Emotional Distress, as alleged in Plaintiff's Sixth Cause of Action.

7. Awarding counsel fees as by law allowed.

8. Assessing the costs of this action against the defendants and ordering such other and further relief to the plaintiff, as to this Honorable Court seems appropriate, equitable and just.

This the 27th day of October 2023.

[Signature Block on Next Page]

<pre>                              s/J. Elliott Field
                              J. Elliott Field, Attorney-at-Law, PLLC
                              NCSB # 21679
                              216 N. McDowell St., Ste. 100
                              Charlotte, NC 28204
                              P (704) 334-3747
                              F (704) 334-3748
                              Email:  *efieldjd@gmail.com*

                              *ATTORNEY FOR THE PLAINTIFF*
</pre>